IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGANNA ECKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | No. 2:23-cv-38 |
| WEST TEXAS A&M UNIVERSITY | § | |
| And TEXAS A&M UNIVERSITY | § | |
| SYSTEM, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Georganna Ecker files this Complaint against Defendant West Texas A&M University and Texas A&M University System.

## Parties

1. Plaintiff Georganna Ecker is an individual residing in Texas.

2. Defendant West Texas A&M University is a public university located in Canyon, Texas.  West Texas A&M University may be served with process through its president, Walter V. Wendler, 2501 4th Avenue, Canyon, Texas 79015.

3. Defendant Texas A&M University System is a public university system based in College Station, Texas.  Texas A&M University System may be served through its chancellor, John Sharp, Moore/Connally Building, 7th Floor, 301 Tarrow, College Station, Texas 77840-7896.

## Jurisdiction and Venue

4. This Court has federal question jurisdiction under Title VII of the Civil Rights Act of 1964.

1

5.  Venue is proper because West Texas A&M is located in this District and because all of the relevant events occurred in this District.

## Claim for Relief

6.  Ms. Ecker was the Director of the Civil Rights and Title IX Department at West Texas A&M University (WTAMU). She reported to and was supervised by personnel from the Texas A&M University System (the System). The System exercised joint control with WTAMU over her employment.

7.  Ms. Ecker was excellent at her job. In her annual evaluations, two different supervisors gave her scores of "Exceeds Expectations" and "Significantly Exceeds Expectations" in multiple categories. Her last evaluation gave her an overall score of Exceeds Expectations. Ms. Ecker never received any write-ups or other disciplinary actions, nor did anyone ever criticize her performance.

8.  In the second half of 2021, Ms. Ecker investigated allegations of sex discrimination within the campus police department. After she found evidence of sex discrimination and other unlawful conduct, she was removed from the investigation, subjected to threats, and terminated because she could not be "trusted."

9.  Beginning in September 2021, she investigated various violations of law, including sex discrimination, within the campus police department. Specifically, current and former female officers presented sex discrimination complaints against Patrol Sergeant Aaron Price and Patrol Lieutenant Zachary Nethery. In the course of her investigation, Ms. Ecker found substantiation for violations of Title IX and Title VII, as well as evidence of other violations of law. Some of these violations involved Chief Shawn Burns himself. Ms. Ecker placed Patrol Sergeant Price on suspension during the investigation. This triggered retaliation by Chief Burns. During the course

of the investigation, Chief Burns made negative comments about Ms. Ecker to Vice President Randy Rikel in an apparent effort to discredit her.

10. Before Ms. Ecker could complete the investigation, she was suddenly removed from the investigation on December 7, 2021. This was done at the recommendation of Brian Bricker with the Office of General Counsel for the System.

11. Even though she was no longer responsible for the investigation, Ms. Ecker was concerned that Chief Burns was orchestrating a cover up of the sex discrimination and violations of law within the campus police department. She stepped out of her role as Director of the Civil Rights and Title IX Department to protest the matter directly to Chancellor Sharp and to other officials. In an e-mail dated December 17, 2021, she informed Chancellor John Sharp of the System of the developments and expressed concerns that the sexual discrimination and overall negative climate in the campus police department would not be properly addressed

> Based on the events that occurred while conducting both investigations and since case transfer, it's my notion the transfer occurred due io the information obtained during the course of the investigation revealed acts of unethical and discriminatory behavior by Price and Nethery. There's indication the University Police Chief Shawn Burns promotes the safeguarding of Price and Nethery and has attempted to discredit my office's investigation, all without regard for the two complainants that remain working for him and other officers who reported information revealing a systemic issue within the department. It's my understanding the University Police Department completed a climate survey several years ago that revealed issues inherent in the overall system but was intentionally disregarded by Burns.

Ms. Ecker also expressed concern that the close relationship between Chief Burns, Randy Rikel of WTAMU, and Brian Bricker of the System was tainting the investigation and putting her job at risk:

> Rikel is University Police Chief Shawn Bums' direct report and friend and Bricker is also alleged to have a close relationship with Burns. I believe this has obscured Rikel's and Bricker's ability to remain unbiased and I fear termination for speaking out.

3

Nothing was done in response to Ms. Ecker's opposition to this discriminatory conduct, and nothing was done to protect her from retaliation. Chancellor Sharp did not respond to or even acknowledge the e-mail.

12. In January 2022, Ms. Ecker learned that Chief Burns had said "when all this is over, bodies are going to be stacked, starting across the hall." Ms. Ecker's office was across the hall from Chief Burns' office. She reported this to Chancellor Sharp in an e-mail dated January 13, 2022:

> I was told University Police Chief Shawn Burns told dispatcher Zayne Hunt this morning that "when all this is over, bodies are going to be stacked, starting across the hall". To contextualize it, Burns is referring to the on-going Title IX Investigations mentioned below. I spoke directly to Zayne Hunt this morning and confirmed Burns made the statement to him.
>
> My office is located across the hall from Burns so I take this threat personally, whether it's meant to cause me and my staff physical harm or to retaliate against me and my staff for participating in the investigation, this is a very concerning statement.
>
> Not only do I fear termination as stated below, that now includes fear of retaliation or harm of some kind.

Once again, Chancellor Sharp did not respond to or even acknowledge the e-mail.

13. A couple weeks later, a human resources representative informed Ms. Ecker that she was being suspended and would be terminated. When Ms. Ecker asked for a reason, the representative told her that she could not be "trusted." The human resource representative presented her with a severance agreement under which she would resign and release all claims against the University and the System. She did not sign it.

14. Meanwhile, Patrol Sergeant Price, who Ms. Ecker placed on suspension because of allegations of sex discrimination that she substantiated, was allowed to return to work. The bad actor had been protected, while the investigator was being purged.

15. Through her attorney, Ms. Ecker laid out all of these facts in a letter dated February 17, 2022, to Chancellor Sharp. Once again, Chancellor Sharp did not respond. Instead, Ms. Ecker received a notice dated March 1, 2022, stating that she was terminated. After Ms. Ecker was terminated, the replacement investigators from the System whitewashed the allegations against Patrol Sergeant Price.

16. A separate investigation corroborated that Chief Burns made the "bodies are going to be stacked" comment. In fact, Chief Burns claimed that he did not mean it as a threat of violence, but rather that "he wanted people fired." This, of course, is exactly what happened. Nevertheless, WTAMU and the System have sought to brush off the retaliation by arguing that Chief Burns was not Ms. Ecker's direct supervisor. While it is true that Chief Burns lacked the power to fire Ms. Ecker, WTAMU and the System protected Chief Burns and Patrol Sergeant Price by removing Ms. Ecker from the investigation and then terminating her when she continued to oppose the discriminatory practices in the campus police department.

17. To this date, neither WTAMU nor the System have articulated a coherent reason for Ms. Ecker's termination. An attorney for the System has claimed that Ms. Ecker had performance issues, but has also acknowledged that her performance reviews were spotless. Another attorney claimed that Ms. Ecker had failed to mention an audio recording in her draft report, but he was in fact well aware of the recording. In any event, this would be a ground for instructing Ms. Ecker to correct the draft report, not a ground for termination. There was no apparent reason for my termination other than retaliation and a desire to facilitate a cover up of sex discrimination within the WTAMU police department.

18. Since Ms. Ecker's termination, Chief Burns has retaliated against other employees in the WTAMU police department and has boasted that Ms. Ecker's termination shows what

happens to people who try to challenge him. Chief Burns has targeted the women who complained about sex discrimination and the other officers who testified in support.

19. Ms. Ecker filed a charge of discrimination with the EEOC in July 2022. The EEOC issued a right to sue letter on February 13, 2023.

20. All conditions precedent have occurred or been performed.

21. WTAMU and the System violated Title VII of the Civil Rights Act of 1964 by terminating Ms. Ecker in retaliation for her opposition to discrimination. WTAMU and the Systems are therefore liable to Ms. Ecker for back pay, loss of benefits, compensatory damages, reinstatement or in the alternative front pay, attorneys' fees, pre- and post-judgment interest as provided by law, and all costs of court.

22. Ms. Ecker demands a trial by jury.

For the foregoing reasons, WTAMU and the System should be cited to appear and answer and, upon final hearing, the Court should enter judgment in favor of Ms. Ecker against WTAMU and the System, jointly and severally, for back pay, loss of benefits, compensatory damages, reinstatement or in the alternative front pay, attorneys' fees, pre- and post-judgment interest as provided by law, all costs of court, and any other relief to which she may be entitled.

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863

ATTORNEY FOR PLAINTIFF